Good morning, gentlemen. Can you hear me okay? Good morning, Your Honor. May it please the court. Yes, Your Honor, we hear you. Thank you. Medical clerk, you can call the first case. 3-22-0485 Westfield Insurance Company Appellant v. Christopher Lagro Appley. Mr. Barger, if you're ready. I may it R-G-E-R for the Plaintiff Appellant Westfield Insurance Company. As I understand it, from the 3rd District's 1982 decision of Trezino v. Kline, 106 LF 3D at 232, appellate courts conduct an independent determination of whether a and that appellate courts to determine this, they look to the substance of the order and not the form. This is consistent with the Illinois Supreme Court's decision in Virginia Sherdy v. Northern Insurance Company of New York 224 L 2nd 550 when the Supreme Court discusses looking to language of a document as a whole, whether it be a pleading or a contract, to illuminate the meaning of a particular term. And courts disregard labels. And in this situation, we look at the order of the circuit court and we're suggesting to the court that looking at the record as a whole and looking at the allegations. Mr. Barger, let me interrupt you for a second with a question. Why do you think the first two issues are not moot? The first two points of relief that you were asking for, why are they not moot? The first two issues? Yes. The duty of cooperation and the second one, I won't articulate it for you, but what do you think that they were not moot? They're not moot because they still have life. All right. You mentioned they have life. What does that mean? You didn't file an amended plea, did you? Did not file an amended pleading. So what happened is opposing counsel filed a motion for judgment on the pleading directed at one of two issues of implied duty of good faith and fair dealing and duty not to act arbitrarily in deciding to settle. The denial of the motion for judgment on the pleadings for Westfield was an interlocutory order. And so the judgment on the pleading in favor of counsel on his motion, which was directed at one issue, it didn't resolve the other issues. Counsel, excuse me, but I'm confused. You're the appellant in this case. If it's an interlocutory order, then we don't have jurisdiction. So we don't have our jurisdiction to hear anything. So why, how can you as the appellant question this court's jurisdiction? I, as the appellant, am suggesting that the court should have sent us the arbitration and said, come back once you know total damages, because the purpose of the statute, the legislative intent is gap filling. And I think that the court labeled the order final when it is not truly final. And that this honorable court should say to the issue of ruling that it wasn't really a final order. It's not truly a final order. And that if the court wants to issue a rule, the trial court finding pursuant to 304A of no just reason to weigh immediate enforcement or appeal, that the court should conduct that analysis. I would suggest that that would not be appropriate for a rule 304A finding, because one of the factors is to avoid a situation where future developments could move the need for appeal. And if the parties go to arbitration, and there's a low policy, there's a finding in favor of Westfield Roar, that the damages, total damages are very low, then it wouldn't be an underinsured motorist fact pattern. And the intent and the reason for the statute of 215 ILCS 5 backslash 143A-2 open paren, 4 closed paren, that that for gap filling wouldn't be there. And the statutory purpose of gap filling would not be triggered. So I think we all recognize that if you go to arbitration and the amount is less than the set off, then you don't have an obligation. That's simple math. And no one's arguing that point. But I don't think you're answering Justice Albrecht's question. Jurisdiction is something you've raised, right? Yes, I say that I didn't want to be forced to go to an appeal. I asked the court to continue the matter till after arbitration. This is, in my mind, similar to the situation of Fleetwood, the first district, where a plaintiff hasn't filed a negligence action, and then a defendant files a third party complaint for a contribution, and then the trial court dismisses it and then says it would be inappropriate in that situation to have a 3048 finding because if the plaintiff filed the negligence claim in the future, that would moot the need for the appeal. And we didn't want to have a situation where if we did not file our appeal, then somehow it would be viewed as that we'd be prejudiced and barred from seeking a set off. Furthermore, it's a situation where the parties haven't gone to arbitration. And we wouldn't want a situation where the plaintiff would say, I strike that the claimant would say, I'm not going to arbitration, you owe me the amount of the policy limits minus the set off that the court said. But this is a situation where the trial court- Has plaintiff ever said or pled that? That's my understanding of what he has communicated. And I'm being- I don't see that as a viable alternative or option under any set of circumstances. I've never heard of that. And I've done personal injury work and insurance work my entire, almost my entire legal career. Yes. We're out of abundance of caution. We filed a complaint for declaratory judgment and out of abundance of caution, we filed this appeal because the trial court labeled an order as final order, even though there were multiple issues that raised by the complaint. And even though we asked the court to continue the matter, and it seemed as though plaintiff's attorney doesn't want to go through arbitration. And I think he said in the record, and this is the appendix 130 and the record nine to 10, so my only concern about that judge is there would be a possibility in theory of Mr. Lagra going to arbitration, incurring the time and significant expense that would be involved in proceeding and potentially wind up with a set off amount that would go beyond whatever his recovery is. I think the most prudent course of action that what I would be suggesting to the court is provide Mr. Lagro a short amount of time. I can prepare a motion for judgment on the pleadings, which your honor did not have before. And with respect to the set off issue, I think all the information, as I stated previously at our hearing a couple of weeks ago- Mr. Barger, that was just the conversation that happened after you filed a motion for summary judgment, which was denied and they were a motion for judgment of the pleadings, and they had not yet done so. Am I correct about that? That is the context. And what he's saying in that report to the court is that he didn't want to incur the expense of going to arbitration and then end up having a result that would be- I disagree with that. Please, please move forward if you would. And we'll let Mr. Wormble address that and then let you talk about that rebuttal. So, at each time in the proceeding, he's opposed continuing the matter until after arbitration. He sought a judgment where the only set off that would be available is a set off from policy limits. And he's ignored and avoided the statutory language that says it's gap-filling and that neither the insured nor the insurer should get a windfall. So, we think that the third district's decision in Roberts v. Northern Insurance Company is the first district's decision that predated Roberts, and that is the Bruno v. State Farm Mutual Automobile Insurance Company case. The Bruno case said, the Grenwald and Hoagland courts held that a determination of damages is a prerequisite in considering whether a set off provision properly prevents double recovery. Accordingly, both courts reversed the trial court's judgments on the pleadings and remanded for proof of damages. And then in Trujillo, that's where the appellate court said, all state is entitled to a set off under the underinsured motorist provisions only for the $20,000 paid by Marta Selwood-Dalska's company. The ultimate amount of Trujillo's recovery, however, depends upon the amount of her damages in order to prevent a double recovery. Now, opposing counsel, when he's citing cases, he's citing, he's looking to one sentence and ignoring the next sentence. So, in his appellate response brief, he talks about, oh, in Trujillo, they said there's a $20,000 set off or something that effect, but he ignores the next sentence that the ultimate amount of Trujillo's recovery, however, depends upon the amount of her damages in order to prevent a double recovery. At each stage of this proceedings, he's ignored the language of the statute of preventing a double recovery, and he has not wanted to continue the matter for the court to then make a determination of whether there is a set off to prevent a double recovery. And that is an issue raised by the complaint in paragraph 19. In the event that an award is entered in arbitration, then it is appropriate for this honorable court to enter a judgment declaring the amounts that Westfield is entitled to set off. Pursuant to the language of section D of the underinsured motorist endorsement, in order to place Lagro in the same position he would have occupied if Weingartner had carried adequate insurance. That's the appendix at eight, the common law record at 16. So, that is the situation, and there are multiple issues, and it should have been not a final order. We think the trial court, we think the order is not a final order, and the trial court, the true intent is to continue the matter, but we were forced to file an appeal because the label of the order is a final order. Your time is up, but you will have an opportunity for rebuttal of Mr. Wombold's argument. Justice Albrecht, Justice Peterson, any further questions? No. Nope. I just have a couple quick ones at the border before we proceed here. Obviously, we all agree that you've only filed for one complaint, which was filed back on January 4th, 2022. Is that correct? Yes, your honor. And the two things that I talked about early on here was a duty of cooperation. It's actually paragraph A. Paragraph B was to not act arbitrarily, conspicuously, or in a manner inconsistent with Westfield's reasonable expectations. Is that correct? Yes, we sought that. Now, are those first two that I just talked about, are those terms of the policy, contractual terms, or are those just legal principles? Of the Supreme Court in Crump, it says... Are they legal principles, or are they part of the contract? They're implied into the contract in all contracts, whether they be construction agreements or insurance policies. So they're not specific to this kind? These are not words from your contract of insurance, correct? Correct. They're not facially on the language that's affirmative, facially expressed. And then finally, other than the general running of relief in D, in paragraph C, you're asking for the court to determine the set-off. In paragraph C? Yes. My recollection is that in our complaint, we asked for the amounts to be set off, plural, and that at each stage of the proceedings, including on appeal, we have clearly made a distinction between set-off from policy limits, set-off from total damages, or both, and that's the situation. Thank you, Your Honor. Thank you, Your Honors. Good morning. My name is Christopher Warmbould. I represent the Mr. Legro. We appreciate the opportunity to defend the circuit court's judgment in this case when it granted Mr. Legro's motion for judgment on the pleadings and denied Westfield's motion for reconsideration. Real quickly, I would like to address a couple points that opposing counsel made a few moments ago. The first thing with respect to the question, was this a final order? Of course it was. The order that was entered by the trial court on October 24th disposed of all issues. The only issue that was remaining was a determination as to the set-off amount. Any other remaining issues, if there were any in the first place, were rendered moot. The second point I want to address really quickly before I go into some of the other points I wanted to go over this morning with Your Honor, Mr. Legro never, not once, when this case was in the circuit court, took the position that he is not going to go to arbitration and that's not something he should have to participate in and Westfield Insurance should just hand over the underinsured motorist limit. Now, I will say that we do believe that this is a policy limit case. Westfield Insurance disagrees with that, so we absolutely are going to go to arbitration, but the only thing that filing the declaratory judgment action achieved in this case was delaying the adjustment of Mr. Legro's underinsured motorist claim. I'd like to back up a little bit, Your Honors, to kind of go over where this case was born out of, and it was born out of Mr. Legro's claim for underinsured motorist benefits that was made after he was seriously injured in a car accident when he was struck head-on by a drunk driver while he was working for his employer at the time, LPL Building Maintenance. After the collision, Mr. Legro pursued a worker's compensation claim as well as a liability claim against the tortfeasor who was named Arthur Weingartner. Now, the tortfeasor's insurance company promptly tendered the $25,000 policy limits for its insured, which Mr. Legro was to accept when Westfield Insurance waived its subrogation rights. So, to the extent that was a duty to cooperate, that's certainly something Mr. Legro complied with. He put them on notice of that, and they said, go ahead, you can accept the $25,000. Now, when Mr. Legro's worker's compensation claim was nearing settlement, that's when Westfield Insurance Company filed its three things. These were the three issues that Justice Pettel brought up earlier this morning. But the one thing that is the most important issue and the only issue is what Westfield Insurance Company sought a declaration to regarding the amount Westfield is entitled to set off from any payment obligation pursuant to Section D of the underinsured motorist endorsement of the subject insurance policy. So, the amount that they were entitled to set off for any payment, that's what they asked for when they filed their declaratory judgment action. That was in subpart C of their prayer for release. Now, they also did request a declaration that Mr. Legro had a duty to cooperate, and he had a duty to not act in a matter that was inconsistent with Westfield's reasonable expectations when negotiating settlement of his worker's compensation benefits. Westfield's prayer for relief when it filed its declaratory judgment action is important for a couple respects. It gave notice to the court and it gave notice to Mr. Legro of the claims that were being presented and the specific release that was being sought. What was particularly unusual about Westfield's initial position is its suggestion that it had a to influence how, when, or for how much Mr. Legro resolved his worker's compensation claimed for. There was nothing within the Westfield insurance policy or the underinsured motorist endorsement that states anywhere that Westfield gets a seat at the table when Mr. Legro is pursuing or settling his worker's compensation claim. That is nonexistent in the policy. That's an extraordinary right that, quite frankly, is just plucked out of thin air. There is also nothing in the subject under insured motorist policy that even requires Mr. Legro to pursue a worker's compensation claim at all. The decision to pursue a work comp claim was his decision and his decision alone. Now, the only interplay between the pursuit of a worker's compensation claim and the insured motorist claim, it's an, it's a class of negotiation. Your honor, I see my time is up but I'm not sure. Well let me jump in for a second. Sure And talk to the clerk. And the other two judges is that seemed to be incredibly fast. Yeah, it wasn't really short. I don't think it was the. I'm looking at my clock. It's only 926 right now. And I'm guessing that Mr. Barber's argument with the questions that were posed actually went over 15 minutes, which makes this impossible. But let me see if the clerk can give us an edge on it. I had to reset it. Okay, where, how far were we into? We were less, we were about, we should have had about nine minutes left. Okay. I would agree with that. I concur with that. This is, you thought this is the shortest argument any court has ever made me. We can say that that time really flew so. Justice Peterson, do you agree with that? Yeah, I agree. And when I saw the light change, I immediately thought that doesn't seem right. It's not been 15 minutes. Sure. Mr. Barber, any objection? I have no objection, your honor. Thank you. Thank you. Let's, let's restart the clock at nine minutes and Mr. Wormbold, you can continue. Okay. Thank you, Justice Howell. So, as I was saying a moment ago, the interplay between the pursuit of a workers' compensation claim and the, the underinsured motorist policy is the limit of insurance for underinsured motorist coverage will be reduced by all sums paid or payable, quote, under any workers' compensation disability benefits or similar law. This is the only impact an amount received from workers' compensation benefits has on the limits of liability, that $100, that $1 million limit of liability. It reduces that limit of liability by whatever sum was paid or received through workers' compensation. Now, at the point that Mr. Legro filed his answer to the complaint for declaratory judgment that was instituted by and approved by the commission. Westfield had been apprised of the impending settlement of Mr. Legro's workers' compensation claim weeks before it was actually ever resolved. However, it chose to sit idle. It never contacted Mr. Legro's workers' compensation attorneys, or it never petitioned to intervene in the workers' compensation action. Again, to the extent that it thought it had any permission or ability to intervene in that work comp claim. And all of this communication and the notice that was provided to Westfield Insurance is evidenced in the written correspondence that's found in the common law record. Your honors can find that on pages 285 to 293 of the common law record. And I bring that up for two reasons. Westfield's inaction in this case, when it was put on notice of the impending work comp settlement, demonstrates it knew it had absolutely no right to intervene in Mr. Legro's workers' compensation claim in any matter. And it also evidences the fact or the reality that there was only one justiciable issue for the circuit court to determine in the declaratory judgment action. And that's what amount Westfield is entitled to set off from any payment obligation of and after all, a declaratory judgment action allows the court to address the controversy before steps are taken that give rise to a claim for damages or other relief. To the extent Westfield thinks Mr. Legro breached some contractual duty owed to Westfield by settling his workers' compensation claim, they are free to file a breach of contract action against them. They have not done so. Counsel, assuming you went to arbitration, and you got an award of, I don't know, $500,000, they would have to pay, Westfield would not in any way be affected by the workers' comp lien because the settlement of the workers' comp claim, because they would, in fact, be paying instead of to Mr. Legro, they would be paying the workers' comp lien back to the workers' comp carrier. Is that correct? Yes. So, the workers' compensation, any amount that was received through arbitration in your scenario, Justice Albrecht, if you were to be awarded $500,000, the amounts that were received from the third-party tort fees and workers' compensation would be set off against any recovery. So, in your scenario, Mr. Legro would receive $398,000. And that would be the position that he would have been placed in had Arthur Weingartner had insurance with a $500,000 policy limit. It puts him in exactly the same position that he would have been in had that happened. It doesn't allow him to receive some sort of double recovery. And that's the position we maintained throughout the proceedings in the lower court. If he were to receive the full $500,000, then Mr. Legro would be receiving a double recovery because he would have already been compensated over $101,000 between workers' compensation and the third-party tort fees, and then getting $500,000 on top of that. And he can't do that. That would be a double recovery. His damages, if he were awarded $500,000 at arbitration, would be the extent of his damages. It's also important to point out that when Westfield moved for judgment on the pleadings, it admitted that the set-off determination was, in fact, the sole remaining justiciable issue because it only sought a declaration that Mr. Legro was collaterally stopped from receiving anything more than $9,271 on his underinsured motorist claim. Put differently, Westfield apparently believed that by settling his workers' compensation claim, it was entitled to a set-off of $990,000. In addition to that, when Westfield moved for judgment on the pleadings, it didn't call it a partial motion for judgment on the pleadings or intimate in any way that there were any remaining justiciable issues for the lower court to resolve. And Judge Hayes recognized that when we were at hearing for Westfield's motion for judgment on the pleadings. She said at the outset that resolving the set-off dispute was the only remaining issue for the court to decide, and all other points originally raised in Westfield's declaratory judgment complaint were now moved as a result of the settlement order of the work comp claim. And that was because when Mr. Legro's workers' compensation claim was settled, there was no future action for the circuit court to guide. The only thing that remained was determining what this math problem was, what's the set-off amount. But notably, when Judge Hayes said that when we were at hearing on September 7, 2022, Westfield didn't object on the record. It didn't bring to the court's attention that there were other unresolved issues. Instead, it proceeded with the incredible position that the only thing Mr. Legro could seek to recover through his underinsured motorist claim was at most $9,271.51. And we had a significant amount of difficulty trying to figure out how that number was even came up with since it wasn't an amount that was recovered from the tort theater or from workers' compensation. And as it turns out, that figure that Westfield came up with is apparently the amount that was deducted from the workers' compensation settlement for Mr. Legro's attorney's fees and costs. But what's most apparent in glaring in the position Westfield took, which establishes how frivolous this position was from the outset of this case, is if Westfield is right, pursuing a workers' compensation claim would foreclose one's ability to receive underinsured motorist benefits and no person would ever even do it. Why on earth would someone ever pursue workers' comp if it would foreclose their ability to seek full and fair compensation for the damages that were incurred? I see my time is running up. I want to briefly state that the court correctly determined the set-off amount that Westfield was entitled to. Again, there were only two amounts available. $25,000 received from Arthur Weingartner's policy and the workers' compensation amount that was recovered, $76,093.33. The remaining issue that Westfield brings up in the brief that it states warrants reversal is that the court somehow erred when it denied its motion for reconsideration after a grant that Chris Legro's motion for judgment on the pleading. That argument should be waived. Westfield Insurance didn't raise any argument in its brief in support of why that was erred to deny its motion for reconsideration. So we would stand on all the points raised in our brief with respect to that. I defer to your honors if you have any questions you'd like me to answer today. I have one question regarding the record, Mr. Warburg. I think the order of the trial court $20,000 is mentioned at one point in time. Did you settle for short money on the underinsured motorist or the $25,000 policy or did you get all $25,000? Justice Hedl, that was the extent of the policy. That was the policy limit, $25,000. That was $20,000 somewhere. I thought maybe they compromised five of that to get the settlement done, but you've answered my question. Justice Albrecht? No questions. Justice Peterson? I have one. So what you're saying, Mr. Warburg, is that, well, let me ask you this. Did Judge Hayes explicitly say that all other issues are rendered moot by her ruling or is that just what you're arguing, that that's why we do have jurisdiction, that it wasn't a true final order? Did she explicitly say everything else is moot or is that just your argument? Yes, she did explicitly say that. If you look at the report of proceedings from September 7th, 2022, it's at the very beginning, Your Honor, and that's when it was the only that was before the court at that point was Westfield Insurance's motion for judgment on the pleadings. Mr. LaGrohe hadn't filed a competing motion yet at that point, but the court did state that the only remaining issue based on the pleadings and based on what was submitted by the parties was the determination as to what the set-up amount was. And Judge Hayes denied Westfield's motion for judgment on the pleadings, but it didn't enter a set-up amount on that particular day because it hadn't received a competing motion for judgment on the pleadings by my client. We provided that to the court shortly thereafter and a declaration as to the appropriate set-up was entered. Okay, thank you. You're welcome. Thank you, Your Honor. Thank you, Mr. Womble. Mr. Barger, you have an opportunity for rebuttal here, and if you could please start off by responding to Mr. Womble's statement that you argued that the accident... Part of the issue that... The reason why we filed the complaint for declaratory judgment is they were going to settle, and we thought that... Counsel, my question was, did you argue that the amount that they received in the workers' compensation capped the amount of their damages? We filed a motion for judgment on the pleadings with respect to the issue of collateral estoppel. Just raising that as an issue for the court, whether that applied or not, the trial court said no. May I proceed with the rest of my rebuttal? We do. The Supreme Court, from v. Forrester, 5602nd at 391, says that courts are supposed to construe the policy as a whole, taking into account the type of policy that is involved. A underinsured motorist policy is not an auto policy. It's not then... For the underinsured motorist coverage, that's supposed to start immediately. The Supreme Court in Sussler discusses the gap-filling nature of underinsured motorist coverage. It fills the gap between the total damages of the insured's claim and a non-exhaustive list of other policies, including fines and... Counsel, are any of the cases that you cite involving a workers' compensation case? I do think that the very case involved a workers' compensation case, if I think so. I think that the Roberts case, 3rd District, 1997, says that workers' comp is part on that list of filling the gap. The idea that counsel can... This is just a multiple line of coverage, just like a defendant would have in tendering defense. They can target one policy and, oh, I'm going to deselect workers' compensation coverage because I don't want to prove my case on workers' comp and I don't want to fully exhaust my workers' comp coverage. I have the choice to target the underinsured motorist coverage and go and vertically up to the underinsured motorist coverage and settle for a comp case, 45 grand lump sum. And it doesn't matter anything after that because it's my choice. Now, I will say this, that is their choice to settle a comp for 45 grand or not. Westfield never claimed that they have the right to intervene. That would be not the law. They have the right to enter into a settlement agreement for whatever amount they want. What there is implied into the insurance contract is a duty of good faith and says they should take into account the reasonable expectations of the parties at the time of contract formation. If it is true that they're claiming that their damages are a million dollars or more, why would they settle for 45 grand on a lump sum for the workers' comp? It's only because counsel thought, oh, that he didn't have to give any consideration. Are you familiar with workers' compensation? I am not a workers' compensation insurer. I don't practice in that area, but I understand the statute requires immediate payment and mandates that employers purchase workers' compensation insurance. It pays out immediately tax-free. I do, but here's my question. These other two theoretical issues that you've raised, I'm just going to sum it up. The whole two different ways of saying good faith and fair dealing. The irony is, I don't know that their mood is that they were never right. There's, I mean, if you think that at some point Mr. Wormel's client commits, in essence, some sort of fraud or bad faith that sticks it to your client, then you could violate a breach of contract of the implied terms that you act in good faith. But there's no facts that would support even considering that at this point. You just put it in there to have it hanging out there and it's not right. It was not moved because it never even became a right is what I'm thinking. Yeah, we just wanted to get court, we put it in there because the purpose of the declaratory judgment act is to address matters earlier, sooner rather than later. And counsel's suggestion of delay is the exact opposite because we acted promptly as the courts encourage the filing declaratory judgment actions and to get before a judge that would be an intermediary to help us. And we did not want to go to appeal. We wanted the matter to be continued. And after arbitration, we have not engaged in any delay whatsoever. We, the purpose of the declaratory judgment. But thank you very much. Mr. Wormel, thank you for your arguments. We're going to take this matter under advisement and issue a ruling in due course.